FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2013 JUN 14  P 12: 03

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| AMERICAN BIRD CONSERVANCY<br>4249 Loudoun Avenue<br>The Plains, VA 20198,<br><br>      Plaintiff,<br><br>  v.<br><br>U.S. FISH AND WILDLIFE SERVICE<br>1849 C Street, N.W.<br>Washington, DC 20240,<br><br>U.S. DEPARTMENT OF THE INTERIOR<br>1849 C Street, N.W.<br>Washington, DC 20240,<br>      Defendants. | )<br>)<br>)<br>)<br>) 1:13cv723<br>) TSE/TRJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *as amended*, to obtain access to records in possession of the U.S. Fish and Wildlife Service ("FWS") and U.S. Department of the Interior ("DOI") concerning the impacts of wind power facilities on the wildlife these entities are entrusted to protect. Plaintiff American Bird Conservancy ("ABC") challenges FWS's decision to withhold a broad array of records – including bird and bat protection plans to minimize and prevent wildlife mortality and models for predicting bird collisions with turbines – under exemptions for financial information, interagency materials protected by deliberative process, and law enforcement proceedings. Additionally, in light of inconsistencies reflected in the records FWS produced, and references to records that were neither produced nor withheld by the agency, ABC challenges the scope of FWS's search. ABC also challenges the failure of FWS and the DOI to produce records in a timely manner in

response to separate requests relating to a proposed regulation that would vastly expand the duration of permits allowing wind power companies to kill Bald and Golden Eagles.

## JURISDICTION

2. This Court has jurisdiction over this action and venue is proper in this district under 5 U.S.C. § 552(a)(4)(B). ABC has its headquarters in The Plains, Virginia.

## PARTIES

3. ABC is a 501(c)(3), not-for profit organization whose mission is to conserve native birds and their habitats throughout the Americas. ABC is the only United States-based group with a major focus on bird habitat conservation throughout North and South America. Founded in 1994, ABC works to reduce threats to birds from habitat destruction; from collisions with buildings, communications towers, and wind turbines; from predation by non-native species such as feral cats, and from toxins such as hazardous pesticides and lead. ABC seeks to achieve these objectives through scientific research and analysis; advocating for bird conservation at the local, state, regional, and federal levels; forming bird conservation partnerships; and pressing for regulatory changes to address such threats effectively.

4. ABC's "Bird-Smart Wind Program" addresses the threats to birds and their habitats from wind energy development. ABC's Wind Program works to eliminate threats to birds and conserve habitat through the implementation of principles that recognize that "bird-smart" wind energy is an important part of the solution to climate change. To reduce and redress bird mortality and habitat loss, bird-smart wind energy development requires careful site selection, operational and compensatory mitigation, and ongoing bird monitoring. A key element of ABC's program is working with FWS to establish appropriate mandatory federal standards for the siting, construction, and operation of wind facilities. ABC's FOIA requests at

issue here seek records concerning the government's role in monitoring, minimizing, and mitigating bird deaths from the operation of wind power facilities.

5. ABC's experts have been extensively involved in studying and analyzing the impacts of wind energy on migratory and other birds. For example, in 2005, ABC submitted comments on FWS's Interim Guidance on Avoiding and Minimizing Impacts from Wind Energy. In 2007, ABC's former Director of Conservation Advocacy, Dr. Michael Fry, testified before a Congressional subcommittee on the wildlife impacts of wind energy projects constructed in areas of high bird use. Most recently, in 2011, ABC submitted a petition for rulemaking to FWS, requesting the establishment of a mandatory permitting system for siting, constructing, and operating wind energy projects and mitigating of their impacts on migratory birds.

6. ABC attended every public meeting of the Wind Turbines Guidelines Federal Advisory Committee, and commented on draft federal Guidelines and recommendations aimed at minimizing and mitigating the effects of wind power development on birds.

7. ABC regularly submits comments during federal regulatory processes applicable to wind energy projects. Recent examples include FWS's proposed change to eagle take permit tenure, FWS's draft Eagle Conservation Plan Guidance, the Upper Great Plains Wind Energy Programmatic Environmental Impact Statement, the Midwest Wind Habitat Conservation Plan, the Hawai'i Clean Energy Programmatic Environmental Impact Statement, the Great Plains Wind Energy Habitat Conservation Plan, the Desert Renewable Energy Conservation Plan, and the Mid-Atlantic Regional Environmental Assessment for Wind Leasing Areas. In addition, ABC has commented on individual wind projects in several states, including Hawai'i, North Dakota, Oregon, and offshore Maine and Texas.

8. FWS is a federal agency in control of records responsive to ABC's FOIA requests. FWS is an agency of the DOI.

9. The DOI is a federal executive department in control of records responsive to ABC's FOIA request.

## STATUTORY FRAMEWORK

10. FOIA was enacted "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S. Rep. No. 813, at 3 (1st Sess. 1965). As the Supreme Court has affirmed, "Congress believed that this philosophy, put into practice, would help 'ensure an informed citizenry, vital to the functioning of a democratic society.'" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). Accordingly, "the basic purpose" of FOIA is "to open agency action to the light of public scrutiny." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976)).

11. FOIA requires agencies of the federal government, upon request, to conduct a reasonable search for, and release of, records to the public, unless one of nine specific statutory exemptions applies. 5 U.S.C. § 552(b).

12. Exemption 4 exempts "trade secrets and commercial or financial information obtained from a person that is privileged or confidential." *Id.* § 552(b)(4).

13. Exemption 5 exempts matters that are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," including records protected by the deliberative process. *Id.* § 552(b)(5).

14. Exemption 7(A) exempts records "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." *Id.* § 552(b)(7)(A).

15. FOIA requires that federal agencies produce portions of records – such as factual materials – that are not protected by any exemption and are "reasonably segregable" from the remainder of the record. *Id.* § 552(b).

16. FOIA requires that federal agencies comply with the request and advise the requester of any withholdings within twenty days. *Id.* § 552(a)(6)(A)(i). In "unusual circumstances," federal agencies may extend this time limit by up to ten working days by giving written notice to the requester. *Id.* § 552(a)(6)(B)(i).

17. Requesters may appeal any adverse determination to the head of the agency. *Id.* The agency is required to "make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal." *Id.* § 552(a)(6)(A)(ii).

18. A requester is deemed to have exhausted administrative remedies "if the agency fails to comply with the applicable time limit provisions" of FOIA. *Id.* § 552(a)(6)(C)(i). In that event, FOIA expressly authorizes the requester to sue the agency in federal court. *Id.* § 552(a)(4)(B).

19. Upon taking office, President Obama reaffirmed the importance of providing government records to the public under FOIA, echoing the words of Congress and the Supreme Court that "[a] democracy requires accountability, and accountability requires transparency" and

emphasizing that FOIA "should be administered with a clear presumption: In the face of doubt, openness prevails." Memorandum of President Obama Regarding FOIA (Jan. 21, 2009).[1]

20. On March 19, 2009, Attorney General Eric Holder issued a memorandum to all agencies concerning implementation of FOIA, which stressed that "[a]n agency should not withhold records merely because it can demonstrate, as a technical matter, that the records fall within the scope of a FOIA exemption." The Attorney General further reminded agencies that "FOIA requires them to take reasonable steps to segregate and release nonexempt information."[2]

21. The Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. §§ 703 *et seq.*, prohibits killing most species of birds. Enacted to fulfill the United States' treaty obligations to protect migratory birds, the MBTA provides that "[u]nless and except as permitted by regulations made as hereinafter provided in this subchapter, it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, attempt to take, capture, or kill . . . any migratory bird." 16 U.S.C. § 703(a).

22. Where proposed wind power facilities may kill, harm, or otherwise "take" species protected by the Endangered Species Act ("ESA"), the developer must apply to FWS for an "incidental take" permit. 16 U.S.C. § 1531 *et seq.* Several species of bats and birds that may be impacted by wind power facilities are listed as endangered or threatened under the ESA.

23. The Bald and Golden Eagle Protection Act ("Eagle Act"), 16 U.S.C. §§ 668-668c, prohibits the unauthorized killing or other "taking" of Bald and Golden Eagles. Take permits must be obtained from FWS, and such permits must set forth measures designed to minimize and mitigate takes.

---

[1] Available at http://www.whitehouse.gov/the_press_office/FreedomofInformationAct/.

[2] Available at http://www.justice.gov/ag/foia-memo-march2009.pdf.

## FACTUAL BACKGROUND

### A. Wind Power's Effects On Birds

24. ABC recognizes that the environmentally responsible development of renewable energy, including wind power, may benefit society by alleviating the effects of climate change on ecosystems.

25. Rapid development of the wind industry and proliferation of massive wind turbines can pose a serious threat to migratory birds and other wildlife, particularly if wind power developers build huge turbines, associated power lines, and other infrastructure in ecologically sensitive locations and other areas where they are likely to kill large numbers of migratory birds or other wildlife, or destroy or otherwise disrupt their habitat. As wind power becomes an increasingly significant share of the nation's energy portfolio, public interest in these issues is growing.

26. Developers of wind power projects often provide FWS with study protocols, data collected, and models used to project future collisions in seeking permit applications under the ESA or the Eagle Act, and to demonstrate compliance with these laws and the MBTA. This includes data relevant to potential bird and bat impacts for proposed wind power facilities, and post-construction bird and bat mortality data for completed facilities. FWS often sends letters or submits comments to other federal and state agencies concerning the bird and bat impacts of the facilities under environmental review procedures set by federal and state law.

27. Additionally, FWS has adopted Land-Based Wind Energy Guidelines that address the impact of wind projects on wildlife, and FWS reviews bird and bat protection plans for specific wind power facilities to monitor, minimize, mitigate, and prevent mortality of federally-protected birds and bats.

### B. ABC's FOIA Requests

#### 1. FOIA Requests Relating to Wildlife Impacts At Specific Facilities

28. Seeking to understand the effects of wind power facilities in Kenedy County, Texas on birds and bats and any efforts by FWS and the wind power developers to address mortalities, ABC made a FOIA request on April 5, 2011 to FWS Region 2. ABC requested "full copies of all documents related to mortality of birds and bats at wind farms in Kenedy County, Texas, including post-construction mortality data/studies; and U.S. Fish & Wildlife Service (FWS) internal and external correspondence about bird and bat mortality at wind farms in Kenedy County, Texas."

29. On October 14, 2011, ABC sent additional FOIA requests to several regional offices of FWS requesting records pertaining to specific proposed and constructed wind power facilities. ABC sought "pre-construction studies of potential bird and bat impacts for the proposed Projects, and post-construction bird and bat mortality data for the completed Projects; any correspondence between FWS and the concerned Project developer regarding bird and bat impacts of the Projects; and any letter or comments submitted by FWS to any other state or federal agency concerning the bird and bat impacts of the Projects." Specifically, ABC requested records concerning the proposed Grapevine Canyon Wind Project in Arizona from FWS Region 2; the proposed Goodhue Wind Project in Minnesota from FWS Region 3; and several named wind power projects in South Dakota, North Dakota, and Nebraska from FWS Region 6.

30. In responding to the four requests, FWS denied ABC access to 54 documents in full or in part, comprising hundreds of pages, on the grounds that all such records were exempt from disclosure under various FOIA exemptions. The withholdings included information

essential for the public to evaluate impacts of wind power on wildlife, including bird and bat protection plans, data from bird mortality studies, models for predicting mortality from collisions, and plans for future monitoring and reporting of wildlife mortalities at wind power facilities. The final determinations were dated September 7, 12, and 14, 2012.

31. On October 19, 2012, ABC submitted a timely, detailed administrative appeal of FWS's decision to withhold, under Exemption 4, two versions of a draft bird and bat protection plan, including FWS comments on the plan, for the Grapevine Canyon wind power proposal. ABC asserted that FWS had not justified its withholdings under exemption 4 for various reasons, including that the draft bird and bat protection plan did not constitute "commercial or financial" information within the meaning of exemption 4 and that FWS failed to demonstrate that release of the records would result in competitive injury to the submitter or impair the government's ability to obtain necessary information in the future.

32. On October 24, 2012, ABC submitted a timely, detailed administrative appeal of FWS's decision to withhold in full or part, under Exemption 5, 28 documents concerning the wildlife impacts of the proposed Goodhue wind power facility – specifically "wind turbine collision[] risk eagle mortality modeling data or methodologies." ABC asserted that FWS had not justified its withholdings under exemption 5, because scientific calculations and objective assessments of scientific data are not "predecisional" or "deliberative" for purposes of exemption 5, which is meant to safeguard sensitive policy or legal determinations.

33. On October 26, 2012, ABC submitted a timely, detailed administrative appeal of FWS's decision to withhold in full or part, under Exemptions 4, 5, and 7(A), 18 documents pertaining to bird and bat mortality at wind power facilities in Kenedy County, Texas, and the adequacy of its search. ABC asserted that FWS had not adequately justified withholding three

9

bat and bird protection plans and three records pertaining to post-construction monitoring under exemption 4, including because these documents did not constitute "commercial or financial" information and FWS failed to meet its burden to establish that the information was "confidential." As to exemption 5, ABC explained that FWS's descriptions of the records were legally inadequate to justify withholding two records in full and one in part, because "notes asking for review/input on proposal and reply comments with attachment," "review of proposal," and the agency's responses concerning "Scientific Collecting Permit" did not constitute the kind of "predecisional" and "deliberative" records that exemption 5 is meant to safeguard. As to FWS's decision to withhold nine records under exemption 7(A), ABC asserted that the agency's limited descriptions of the records, along with FWS' record of never having prosecuted a wind power operator for violations of the MBTA, undermined any claim that the records were compiled by FWS for law enforcement purposes and that release of the records could be reasonably expected to interfere with enforcement proceedings. Finally, as to the search, ABC informed FWS that important records were missing, including mortality data for some existing facilities, records related to other planned wind power installations, and a bird and bat monitoring plan mentioned in an email message.

34. Also on October 26, 2012, ABC submitted a timely, detailed administrative appeal of FWS's decision to withhold six records in full or part, under Exemption 4, concerning the wildlife impacts of specified wind power facilities in South Dakota, North Dakota, and Nebraska and the adequacy of the Service's search. ABC asserted that FWS had not adequately justified its withholdings under exemption 4, because the plans for avoiding, minimizing, and offsetting wildlife impacts in connection with the facility do not constitute "trade secrets" within the meaning of exemption 4, and because FWS failed to segregate and release parts of the

records that were not protected by exemption 4. ABC also said that FWS did not conduct an adequate search for responsive records, listing as examples three separate wildlife mortality reports that FWS should have provided but did not.

35. By letter dated February 27, 2013, DOI stated that it was reviewing the three appeals to FWS dated October 19 and 26, 2012, and "anticipate[d] completing the Department's decisions on each within approximately one month," *i.e.*, by the end of March 2013. DOI's letter conceded that FWS was beyond the FOIA deadline for resolving the appeal, but asked ABC to "delay filing a lawsuit so that the Department can thoroughly review the issues in the appeals and make a determination," by the end of March.

36. On February 28, 2013, ABC sent an email to DOI explaining that a fourth appeal, dated October 24, 2012, had been sent and was delivered to FWS by Federal Express on October 25, 2012. ABC sent another copy of the appeal and requested confirmation that it would be processed along with the others during the same time frame set forth in DOI's letter. Receiving no response, ABC sent two additional inquiries regarding the fourth appeal, dated March 7 and 27, 2013. DOI has not responded to any of those inquiries, nor has it resolved the three administrative appeals that it said it would resolve more than two months ago.

### 2. FOIA Request For Interagency Comments On Wind Energy Guidelines

37. On June 28, 2012, ABC made another request to the FWS Division of Information Resources and Technology Management in Arlington, Virginia, for "review comments from FWS regional and local offices regarding the drafts of the FWS Land-Based Wind Energy Guidelines" and "interagency review comments regarding the drafts of the FWS Land-Based Wind Energy Guidelines" from agencies other than FWS.

38. Some ten months later, on April 10, 2013, FWS withheld two documents in their

11

entirety, invoking exemption 5: (a) the comments of the Council on Environmental Quality on the draft Guidelines and also on the Service's draft Eagle Conservation Plan Guidance for wind energy, and (b) the comments of the Office of Management and Budget on the draft Guidelines.

39.   On April 25, 2013, ABC filed a timely administrative appeal challenging FWS's decision to withhold these two records in their entirety under exemption 5. ABC asserted that, at a minimum, segregable, non-exempt information was required to be disclosed, and out that information bearing on wind power impacts on wildlife is precisely the kind of information of public interest that, under the President's and Attorney General's memoranda, should be disclosed.

40.   To date, FWS has neither denied ABC's administrative appeals nor produced the records at issue. The mandatory statutory deadlines have passed and ABC has therefore exhausted its administrative remedies for pursuing the information at issue.

### 3.   FOIA Request For Documents Concerning Eagle Act Take Permits

41.   On March 29, 2013, ABC made requests to the FWS Division of Information Resources and Technology Management in Arlington, Virginia, and the Office of the Secretary of the Interior, for records related to meetings of FWS and other Department of the Interior staff with representatives of nonprofit organizations and renewable energy companies in regard to a proposed rule that would dramatically increase the duration of Eagle Act take permits, a second rulemaking also involving Eagle Act take permits, and the FWS guidance document used by wind developers seeking Eagle Act take permits. Specifically, ABC sought staff communications related to such meetings, including "meeting agendas, meeting notes, emails, and letters," and records prepared for the meetings such as "handouts and presentations."

42.   On April 1, 2013, FWS acknowledged receipt of ABC's FOIA request.

43.   Also on April 1, 2013, the Office of the Secretary of the Interior acknowledged

receipt of ABC's FOIA request, and informed ABC that the Department of the Interior would take a 10-workday extension to respond to the request.

44. On April 12, 2013, FWS informed ABC that DOI would make "one consolidated response" to both requests, and that FWS planned to "submit responsive documents from FWS" that would be included in DOI's response.

45. DOI has neither informed ABC that the agencies are denying ABC's FOIA requests nor produced the records at issue. The mandatory statutory deadlines have passed and ABC has therefore exhausted its administrative remedies for pursuing the information at issue.

## CLAIMS FOR RELIEF

46. With regard to ABC's requests for records relating to specific wind power projects, ABC is entitled to information improperly withheld from it under exemptions 4, 5, and 7(A). In addition, FWS has failed to perform an adequate search for responsive records in response to two of ABC's requests. ABC has a right to obtain the requested records under FOIA, and FWS has no lawful basis for withholding the records.

47. With regard to ABC's request for interagency records pertaining to the wind energy guidelines, ABC is entitled to information withheld from it under exemption 5. ABC has a right to obtain the requested records under FOIA, and FWS has no lawful basis for withholding the records.

48. With regard to ABC's request for records concerning the Eagle Act take permits, ABC is entitled to the information responsive to its request. Defendants' constructive denial of their requests lacks any basis in law.

**WHEREFORE**, ABC respectfully requests that this Court:

1. declare Defendants in violation of FOIA;

2. order Defendants to provide ABC with all records to which it is lawfully entitled;

3. award ABC its costs and attorneys' fees; and

4. award ABC such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*Tammy L. Belinsky*

Tammy L. Belinsky, Esquire (VA Bar 43424)
The Environmental Law Group, PLLC
9544 Pine Forest Road
Copper Hill, Virginia 24079
Telephone: 540-929-4222
Facsimile: 540-929-9195
Email: tbelinsky@envirolawva.com

David S. Bailey, Esquire (Va Bar 24940; DC Bar 455518)
Jennifer A. French (Va Bar 81395)
The Environmental Law Group, PLLC
5803 Staples Mill Road
P.O. Box 6236
Richmond, Virginia 23230
Telephone: 804-433-1980
Facsimile: 804-433-1981
email: dbailey@envirolawva.com;
jfrench@envirolawva.com

Jessica Almy (D.C. Bar No. 996921)
Pro Hac Vice Pending

Eric R. Glitzenstein (D.C. Bar No. 358287)
Pro Hac Vice Pending

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W., Suite 700
Washington, D.C. 20009
(202) 588-5206
Fax (202) 588-5049
jalmy@meyerglitz.com
eglitzenstein@meyerglitz.com

June 14, 2013