IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMERICAN BIRD CONSERVANCY, ) <br> ) <br> PLAINTIFF, ) <br> ) <br> v. ) <br> ) <br> U.S. FISH AND WILDLIFE SERVICE, ) <br> U.S. DEPARTMENT OF THE ) <br> INTERIOR, ) <br> ) <br> DEFENDANTS ) <br> _____ | CIVIL ACTION NO. 1:13-CV-723 TSE/TRJ |

**PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff American Bird Conservancy ("ABC") hereby petitions for an award of attorneys' fees and expenses pursuant to the citizen suit provision of the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. § 552(a)(4)(E).[1] As explained below, this case resulted in the release of agency records on an important matter of public concern – the impact of wind power projects on eagles and other migratory birds and the federal government's role in avoiding and minimizing those impacts. Accordingly, ABC is both eligible for and entitled to an award of fees and costs.[2]

**BACKGROUND**

Because the Court is already familiar with the general background of this case, ABC will only summarize those facts that bear specifically on the fee issue. As previously explained by the Court, ABC is a "non-profit organization that seeks to conserve native birds and their habitats

---

[1] On July 7, 2014, the Court extended the time for filing a fee application until "twenty days following the final disposition of any appeal, if a notice of appeal is filed," or "twenty days following the expiration of the time for filing a notice of appeal, if such a notice is not filed." ECF No. 45. Since no notice of appeal was filed, ABC's fee application is due today pursuant to the Court's Order.

[2] In its summary judgment disposition, the Court noted that "[a]lthough ABC's stated need for the documents provides context for the request . . . a requester's need for documents is neither required nor relevant in assessing whether an agency must comply with a FOIA request." ECF No. 41 at 2. As discussed below, however, a particular requester's interest in the documents at issue *is* relevant to a claim for fees.

throughout the Americas through scientific research and analysis as well as advocacy." ECF No. 41 at 2. One of ABC's advocacy and research programs, the "Bird-Smart Wind Program," is "aimed at addressing threats to birds and avian habitats caused by wind energy development" and, "[i]n furtherance of this program, ABC seeks to ensure that the federal government minimizes adverse impact[s] on birds and their habitat during the construction and operation if wind energy facilities." *Id*.

The FOIA requests at issue in this case were part and parcel of that programmatic effort. *See* Supplemental Declaration of Darin C. Schroeder (Ex. A) at ¶¶ 4-7. The requests sought records relating to both national policies developed by the U.S. Fish and Wildlife Service ("FWS" or "Service") and the Department of the Interior ("DOI") as well as FWS oversight at individual projects where birds are at an especially high risk. *Id*.; *see also* ECF No. 41 at 3-4 (describing the requests at issue).

When the Service and DOI withheld documents or otherwise failed to respond to the requests, ABC filed its Complaint in this Court on June 14, 2013. *See* ECF No. 1. The filing of the lawsuit triggered an initial, substantial release of documents. In particular, one of the FOIA requests at issue was an October 11, 2011 request to FWS Region Six for pre-construction studies of potential bird impacts of certain specific projects, as well as discussions between the FWS and the project developer regarding such impacts at the projects. Although, on September 14, 2012, the Service had denied ABC's request for a number of documents, by letter dated August 16, 2013 – shortly after Defendants were required to file their Answer in this case, *see* ECF No. 11 (Answer filed on July 29, 2013) – the FWS released to ABC 225 pages of previously withheld materials in six documents covered by the Region Six request, including lengthy post-construction monitoring

reports for two operating wind power projects in South Dakota.  *See* Ex. A at ¶ 6.[3]

A day earlier than the release of Region Six materials, Defendants made another substantial release of documents at issue in the case.  These documents were responsive to the March 29, 2013 requests to the FWS and the Office of the Secretary of the Interior for records reflecting and relating to meetings of the FWS and DOI staff with renewable energy companies and other outside groups concerning a highly controversial regulation allowing the issuance for up to thirty years of federal permits to kill or otherwise "take" bald and golden eagles at wind power and other projects. *See* Ex. A at ¶ 7.  Although the FWS was required by the FOIA to provide documents responsive to these requests within twenty working days, *see* 5 U.S.C. § 552(a)(6)(A)(i), as of when ABC's Complaint was filed – two and aone-half months after submission of the requests – ABC had not received any responsive documents.  *See* Ex. A at ¶ 7.  However, by letter dated August 15, 2013, Defendants released 1,187 pages of responsive documents to ABC (225 pages of which had redactions).  *Id*.

On November 22, 2013, after producing a *Vaughn* index pertaining to the materials that Defendants had continued to withhold, Defendants filed their motion for summary judgment with regard to the records remaining at issue.  *See* ECF No. 23.  However, that motion did not advance any legal argument at all with respect to certain records that had been withheld under FOIA Exemption 7(A), which authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such records . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

---

[3] ABC filed an administrative appeal for these documents on October 26, 2012.  Although the Service was required by statute to respond to that appeal within twenty working days, *see* 5 U.S.C. § 552(a)6)(A), as of the date this lawsuit was filed – and seven months after the appeal time had run – ABC had still received no response to its administrative appeal.  *See* Ex. A at ¶ 6.  Accordingly, the filing of this case was clearly instrumental in the release of additional documents.

Accordingly, when Plaintiffs filed their opposition to Defendants' motion along with their motion for summary judgment on December 23, 2013, they pointed out that Defendants had failed to explain how the records at issue – which concern the mortality of birds and other wildlife at wind projects in Kenedy County, Texas – were covered by Exemption 7(A), and that, based on the minimal descriptions in the *Vaughn* index and the precedents construing Exemption 7(A), Defendants had no lawful basis for continuing to withhold these materials. *See* ECF No. 26-1 at 10, 14, 16-18. Several weeks later, by letter dated January 16, 2014, the FWS released to ABC all of the Kenedy County documents that had been withheld on Exemption 7(A) grounds, i.e., nine documents in full consisting of 38 pages of additional material. *See* Ex. A at ¶ 8.

As explained by the Court, "[a]lthough the parties filed, fully briefed, and argued" cross-motions for summary judgment concerning the remaining exemption claims that Defendants did not abandon in the course of summary judgment briefing, "it became clear in the course of that process that the document descriptions provided by the federal defendants in the *Vaughn* Index were, by themselves, insufficient to permit a confident assessment of the federal defendants' exemption claims." ECF No. 41 at 1 (footnote omitted). Accordingly, "Orders issued requiring the federal defendants to submit the disputed documents in a form or manner that would facilitate *in camera* review." *Id*.

However, the "federal defendants made two unsuccessful attempts to produce the documents in an appropriate form" for *in camera* review "before succeeding on the third." ECF No, 41 at n.3 (citing Orders); *see also* ECF No. 33 (3/7/14 Order requiring *in camera* submission); ECF No. 34 (3/27/14 Order explaining that the "form in which the documents were produced renders it impossible for this Court to conduct an adequate and meaningful *in camera* review of the documents," and delineating specific procedures for the resubmission of the materials); ECF

4

No. 38 (4/25/15 Order returning the documents to Defendants for failure to comply with the Court's 3/27/14 Order and directing Defendants to resubmit the materials in "full compliance with the Court's March 27, 2014 Order").

In the course of complying with the Court's *third* Order directing the submission of materials for *in camera* review, Defendants made a fourth release of withheld materials to ABC. *See* ECF No. 40-1 (5/6/14 letter from DOI's Office of the Solicitor to Plaintiffs' counsel explaining that "[w]hilst preparing the records for the court ordered *in camera* review, our office has determined" that additional materials "should be released in full"). In particular, on May 6, 2014, Defendants released parts of four Office of the Secretary documents that had been withheld, which included additional information bearing on the eagle permitting rule and the FWS's and Interior Department's meetings with outside groups and individuals during the development of that rule. *See* Ex. A at ¶ 9; ECF No. 40-1 at 3-16.[4]

Finally, in the Court's June 24, 2014 summary judgment ruling, the Court granted Plaintiffs' motion for summary judgment in part, requiring Defendants to release an additional 13 documents in full as well as portions of one document, and explaining that based on the Court's *in camera* review Defendants had failed to carry their burden of establishing that these materials fell within the claimed exemptions. *See* ECF No. 41 at 2, 8, 10, 12, 13-14. The Court entered judgment for ABC with regard to these materials on June 25, 2014, ECF No. 43, and the government subsequently released them to ABC by letter dated June 30, 2014. *See* Ex. A at ¶ 10. As discussed further below, along with the other disclosures resulting from the litigation, the released materials – which included additional records relating to the eagle permitting rule as well as documents from

---

[4] After receiving these materials, Plaintiffs advised the Court that they "were *not* accurately described in the *Vaughn* index," which apparently "explains why they are now being released in conjunction with the submission of the materials for *in camera* review." ECF No. 40 at 2.

5

FWS Regions Two and Three relating to individual projects – have in fact contributed to ABC's and the public's ability to understand how the government is approaching its responsibilities to protect eagles and other migratory birds while promoting the development of renewable energy. *Id*.

## ARGUMENT

I. **UNDER THE FOIA'S CITIZEN SUIT PROVISION, ABC IS ELIGIBLE FOR AND ENTITLED TO AN AWARD OF FEES AND COSTS.**

   A. **Eligibility**

The FOIA provides that Courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). In response to a Supreme Court ruling defining the term "prevailing party" in a civil rights statute as encompassing only Court-ordered relief, *see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), Congress amended the FOIA specifically to provide that plaintiffs whose lawsuits trigger the disclosure of responsive documents may be eligible for a fee award even if they have obtained no "court-ordered relief." *Mullen v. U.S. Army Criminal Investigation*, No. 1:10cv262 (JCC/TCB), 2012 WL 2681300, at *7 (E.D. Va. 2012) (emphasis added) ("[A]fter the OPEN Government Act of 2007, a plaintiff can become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims.") (internal quotation omitted).

Accordingly, the "FOIA now states that a complainant 'has substantially prevailed if the complainant has obtained relief through *either* – (I) a judicial order, or an enforceable written agreement or consent decree; *or* (II) a voluntary change in position by the agency, if the complainant's claim is not substantial.'" *Id.* at *4 (emphasis added) (quoting 5 U.S.C. § 552(a)(4)(E); *see also Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 525 (D.C. Cir.

6

2011)) (discussing the history of the 2007 Amendment to FOIA).

In this case, ABC satisfies both prongs of the test for fee eligibility, although either one is sufficient. As described above, on three separate occasions following the initiation of litigation, there was a "voluntary change in position by the agency," 5 U.S.C. § 552(a)(4)(E), resulting in the release of documents covered by the FOIA requests at issue: the August 15 and 16, 2013 releases of records following the initiation of litigation, and the January 16, 2014 release of records following the filing of Plaintiffs' motion for summary judgment. There were two *additional* sets of disclosures resulting directly from "judicial order[s]," *id.*, i.e., (1) the May 6, 2014 release of documents resulting directly from the Court's Orders directed at ensuring a meaningful *in camera* review, and (2) the June 30, 2014 release of records required by the Court's partial entry of summary judgment for ABC. *See Mullen*, 2012 WL 2681300, at \*\* 7-8 (finding that a release of records in response to a Court order for the filing of a "representative sampling" of withheld records and that resulted in an additional release of documents meant that the plaintiff "obtained relief through a court order" and thus met the "first statutory basis for substantially prevailing").

In total, as a result of these five separate releases of records – any one of which would be sufficient to render ABC eligible for an award of fees under the plain terms of the FOIA's citizen suit provision – ABC received nearly 1,500 pages of material, much of which "has been used and will continue to be used by ABC to further its programmatic interests in informing the public about the need to develop wind power in a bird-friendly fashion and in advocating to policymakers in as informed a way as possible." Ex. A at ¶ 12. Consequently, ABC is eligible for an award of fees and costs.

### B.     Entitlement

In addition to demonstrating eligibility, a FOIA plaintiff must also establish entitlement to a fee award because such an award is "not automatic, but is to be made where doing so will encourage fulfillment of the purposes of FOIA." *Nix v. United States*, 572 F.2d 998, 1007 (4th Cir. 1978). The "courts traditionally have employed four criteria in exercising this discretion: the benefit to the public derived from the case; the commercial benefit to the plaintiff; the nature of the plaintiff's interest in the information; and whether the government's withholding of the information had a reasonable basis in law." *Sabalos v. Regan*, 520 F. Supp. 1069, 1071 (E.D. Va. 1981); *see also Mullen*, 2012 WL 2681300, at *9 (applying the factors). These factors, and the legislative history on which they are based,

> effectively distill[] . . . down to two conditions for recovering fees. The first condition is that the plaintiff had an insufficient private or pecuniary interest to justify bringing the suit without an award of fees. This requirement encompasses the first three criteria traditionally used by the courts. The second condition is that the government had no reasonable basis for withholding the requested information.

*Id*. Further, "if an FOIA suit meets *either* of these two conditions, the court should award attorneys' fees to the plaintiff." *Id*. (emphasis added). In other words, to obtain a fee award, an eligible plaintiff must demonstrate *either* (1) that its interest in the information at issue was not commercial in nature but, rather, was intended to advance the kind of public interest that the FOIA was principally designed to advance; *or* (2) that the plaintiff *was* motivated by a commercial interest but that the government had "no reasonable basis for withholding" and hence that a fee award would be appropriate for that distinct reason. *Id*.

Here, ABC's interest plainly falls in the first category and hence there is no need for the Court to address whether Defendants had a "reasonable basis for withholding" the many documents that they ultimately disclosed throughout the course of the litigation. ABC is a

"501(c)(3), not-for-profit national organization whose mission is to conserve native birds and their habitats throughout the Americas." Ex. A at ¶ 2. As explained by ABC's Vice President for Conservation Advocacy, Darin Schroeder, ABC had absolutely no commercial interest in the records at issue but, rather, pursued them as part of ABC's Bird-Smart Wind Program, a "key element" of which is to "ensure that the [FWS] develops effective measures for overseeing the siting, construction, and operation of wind facilities in a manner that avoids and minimizes impacts to the extent practicable." *Id*. at ¶ 3. ABC seeks to further this objective by, among other means, "disseminating information to the public and the media concerning the impacts of poorly sited wind power projects on birds and the appropriate means for avoiding and minimizing such impacts." *Id*.

In short, the FOIA requests at issue in this case were not pursued for any commercial or economic reason but, rather, "to obtain documents directly relevant to both the FWS's and Interior Department's general oversight of wind power project impacts on migratory birds, as well as the agency's interactions with wind power companies concerning the impacts of particular projects." Ex. A at ¶ 4. This kind of interest is at the core of Congress's purpose in enacting the FOIA. *See Dep't of Justice v. Reporters' Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989) (explaining that the FOIA's "basic policy of 'full agency disclosures unless information is exempted under clearly delineated statutory language,' *indeed focuses on the citizens' right to be informed about 'what their government is up to*'") (emphasis added; internal quotations omitted).

Moreover, "documents released as a result of this litigation have in fact "furthered ABC's programmatic objectives in advocating for the bird-smart development of wind power and other renewable energy and, as part of that advocacy, informing the public about this issue of public concern." Ex. A at ¶ 5. Indeed, "both with regard to the FWS's and Interior Department's overall

9

policies and regulations, as well as impacts at particular projects, records disclosed as a result of this litigation at various stages have shed light on matters that are important to the public debate over the need to balance renewable energy development with the conservation of birds and other wildlife." *Id*.

As further explained by Mr. Schroeder, there are many concrete examples of ways in which each of the five document releases resulting from the litigation contributed to the public's understanding of the impact of wind power projects on birds in a number of important ways. *See, e.g.*, *id*. at ¶ 6 (explaining that the August 16, 2013 release of Region Six documents contained "[a]mong other valuable information . . . estimates of the birds and bats killed by the turbines" at particular projects, which are "useful in ABC's efforts to compare wildlife mortality estimates at various projects in our ongoing efforts to understand how siting influences mortality, the thoroughness with which various companies are attempting to monitor for and address such impacts, and other issues relevant to development of sound policy for avoiding and mitigating" a federal trust resource protected by the Migratory Bird Treaty Act); *id*. at ¶ 7 (explaining that the August 15, 2013 release of records reflected the process by which a "policy of tremendous importance to the public – i.e., the extent to which wind power and other projects should be authorized by the federal government to kill and otherwise take bald and golden eagles" – was developed, and that "documents released to ABC have been disseminated to the public and the media, as well as Congressional committees concerned about whether and how the FWS is applying the [Bald and Golden Eagle Protection Act] and the [MBTA] to wind power projects"); *id*. at ¶ 8 (explaining that the January 16, 2014 release of Region 2 documents previously withheld under Exemption 7(A) described an incident of a white pelican, an MBTA-protected bird, being struck by a wind turbine at a project in Texas, as well as how poorly sited "windfarms could push

10

migratory paths of birds over into training airspace" needed by the military); *id*. at ¶ 9 (explaining that the May 6, 2014 release of documents resulting from Defendants' compliance with the Court's Orders for *in camera* review included "additional documents bearing on the controversial eagle permitting rule and the Service's and Interior Department's meetings with outside groups and individuals during the development of that rule," and how those meetings "raised questions about potential violations of the Federal Advisory Committee Act"); *id*. at ¶¶ 10, 11 (explaining how the June 30, 2014 release of documents resulting from the Court's summary judgment ruling shed further light on the eagle permitting rule as well as the FWS's "calculations for potential eagle mortality at a particular wind power project," which, along with other information available to ABC, "will contribute to ABC's understanding of how the Service and/or project developers are attempting to assess and estimate the impact that projects will have on local eagle populations, a matter of substantial public and scientific controversy as wind power increasingly expands into eagle habitats throughout the country").

In sum, this is a prime example of a case in which the plaintiff should receive a fee award based on the demonstrable public interest and non-commercial purpose of the requester. Indeed, in the FOIA's legislative history, Congress "'referred repeatedly to disclosure to the press ***and to public interest organizations***'" as the kind of disclosure that should serve as the basis for an award of fees. *Sabalos*, 520 F. Supp. 2d at 1072 (emphasis added) (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529, 533-34 (5th Cir. 1978)). Accordingly, the Court should find that ABC is entitled to as well as eligible for an award of fees. *See also Jarno v. Dep't of Homeland Security*, 365 F. Supp. 2d 733, 739 (E.D. Va. 2005) (awarding fees under FOIA where the "[p]laintiff was not seeking any commercial benefit nor did he receive any such benefit in this action," and explaining that "the Court should consider whether the party requesting fees was indigent *or a non-profit*

*public interest group* and not a large corporate interest") (emphasis added); *cf. Sabalos*, 520 F. Supp. 2d at 1072 (denying a fee award to plaintiffs who had a private interest in IRS memoranda relating to an audit of them and where they had "no intent to disseminate the Service's memoranda to the public").[5]

## II.   THE APPROPRIATE AMOUNT OF AN AWARD

"In this district and elsewhere in this circuit, attorney's fees award have been determined using the procedure that the Fourth Circuit elucidated in *Grissom v. Mills Corp.*, 549 F.3d 313 (4th Cir. 2008);" that procedure directs district courts to "calculate the lodestar, which is the product of the 'reasonable hourly rate' by the 'hours reasonably expended,' in light of the *Johnson/Barber* factors" and then to make any appropriate adjustment based on any "hours spent on unsuccessful claims unrelated to successful ones.'" *Bradford v. HSBC Mortgage Corp.*, 859 F. Supp. 2d 783, 789 (E.D. Va. 2012) (Ellis, J.) (quoting *Grissom*, 549 F.3d at 320-21; citing *Barber v. Kimbrell's, Inc.* 577 F.2d 216, 226 (4th Cir. 1978) and *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).[6]

---

[5] Although the Court need not address whether Defendants had a reasonable basis for withholding where, as here, the FOIA requester is a non-profit organization whose request is clearly designed to further the public interest, *see Sabalos*, 520 F. Supp. at 1072, the record also establishes that at least some of Defendants' withholdings lacked a reasonable basis in law. For example, the Court's summary judgment disposition following the Court's *in camera* review, makes clear that a number of the withholdings fell squarely outside the claimed exemptions. *See, e.g.,* ECF No. 41 at 8 (explaining that "it is clear that release of this information would not cause 'substantial harm to the competitive position of the person from whom the information was obtained'") (internal quotation omitted); *id.* at 12 ("it is clear that this document does not reveal" the kind of information that may be withheld under Exemption 5); *id.* ("the information redacted clearly does not contain 'advisory opinions, recommendations, and deliberations'") (internal quotation omitted). Likewise, the records released to ABC in the course of Defendants' efforts at compliance with the Court's several Orders for *in camera* review were plainly not covered by any FOIA exemption – as Defendants' counsel evidently recognized "[w]hilst preparing the records for the court ordered *in camera* review." ECF No. 40-1 at 2. And since Defendants did not even attempt to support their withholdings of the other documents that were released during the litigation – including the documents withheld on Exemption 7(A) grounds that Defendants made no effort to support in their summary judgment memorandum – it is reasonable to conclude that there was also no "reasonable basis in the law" for withholding of those materials. *Mullen*, 2012 WL 2681300, at *9. Consequently, even if it were necessary for the Court to consider whether that alternative "condition" for an award is met here, *Sabalos*, 520 F. Supp. at 1071, there is a more than sufficient basis for finding that it is satisfied.

[6] The *Johnson/Barber* factors include such matters as the "time and labor expended," the "skill required to properly perform the legal services," the "attorney's opportunity costs in pressing the instant litigation," and the "experience,

With respect to the "hours reasonably expended" in pursuing this litigation through the summary judgment disposition, as set forth in the accompanying Declaration of ABC's lead counsel and the attachments thereto, all of the attorneys and law clerks/paralegals who worked on this case maintained contemporaneous time records reflecting the matters on which they worked. *See* Declaration of Eric R. Glitzenstein (Ex. B) and Attachments 1, 2. These records reflect that Mr. Glitzenstein spent 118 hours since May 2013 for which ABC is seeking recovery; that several associate attorneys with his law firm, Meyer Glitzenstein & Crystal ("MGC") – Jessica Almy, Caitlin Zitkowski, and Michelle Sinnott – cumulatively spent 126.25 hours for which ABC is seeking recovery, and that MGC law clerks/paralegals spent 34 hours for which ABC is seeking recovery. *See* Ex. B at ¶ 7.[7] In addition, Tammy Belinsky, an attorney with the Environmental Law Group in Richmond, Virginia, who assisted with the case as local counsel, spent 15.9 hours for which ABC is seeking recovery. *Id*.

As also reflected in Mr. Glitzenstein's Declaration, in the exercise of "billing judgment," ABC has excluded a significant number of hours from its fee application for which recovery could be sought. *See* Ex. B at ¶ 8. In total, this fee application omits more than 55 hours of attorney time – or more than 20 percent of the total attorney time for which recovery is being sought – reflected on the contemporaneous time records. *Id*.[8]

---

reputation and ability of the attorney." *Jarno*, 365 F. Supp. 2d at 740-41 (internal quotation omitted). As this and other courts have observed, in *Perdue v. Kenny A.*, 559 U.S. 542 (2010), the Supreme Court "expressed skepticism with the propriety of the *Johnson* framework, arguing that it gives too little guidance to judges by placing the emphasis on factors and considerations that are overly subjective." *Bradford*, 859 F. Supp. 2d at 790 n.6 (internal quotation omitted). In any event, ABC is not seeking an upward adjustment in the traditional lodestar calculation based on the *Johnson/Barber* factors, and none of those factors counsels in favor of a significant reduction below that calculation as set forth in this petition.

[7] As explained in Mr. Glitzenstein's Declaration and reflected in the MGC time records, Ms. Almy worked on the litigation from its inception in May 2013 until her departure from MGC in October of that year; thereafter, Ms. Zitkowski and Ms. Sinnott assisted Mr. Glitzenstein with the litigation. *See* Ex. B at ¶ 6.

[8] Especially in view of that voluntary reduction, no further reduction is necessary or appropriate to take into account the fact that ABC did not prevail with respect to every document that was at issue at the outset of the litigation. "It

With respect to a "reasonable hourly rate" for the time expended, *Bradford*, 859 F. Supp. 2d at 798, because ABC is a non-profit organization and its counsel are employed for public-interest law firms that represent such organizations at well-below market rates so that they can pursue litigation they would otherwise be unable to pursue, *see* Ex. B at ¶ 2, an appropriate rate should reflect "a lawyer of [ABC's] counsel's skill and experience in" FOIA litigation. *Bradford*, 859 F. Supp. 2d at 798; *see also American Canoe Ass'n.*, 138 F. Supp. 2d at 740-41 ("'fee awards for nonprofit legal service organizations should be based on prevailing market rates'") (quoting *National Wildlife Fed'n v. Hanson*, 859 F.2d 313, 319 (4th Cir. 1988); *see also* Declaration of Stephen L. Braga (Ex. C) at ¶ 3 ("For many years, I have been very familiar with the work of [MGC] . . . [A]s a public-interest law firm, MGC represents non-profit organizations in environmental and open government litigation and, in doing so, MGC often performs pro bono work and never charges anything close to the market rate that could be charged by attorneys with equivalent expertise.").

Plaintiff's lead counsel, Mr. Glitzenstein, "is one of the nation's leading practitioners and experts in FOIA litigation." Ex. C at ¶ 4 ("I am not aware of any attorney in Washington, D.C. or Northern Virginia whom I would consider more of an expert in FOIA litigation that Mr.

---

is well-settled that that the lodestar properly includes hours spent reasonably advancing unsuccessful claims to the extent that the unsuccessful claims share a 'common core of facts' or are otherwise related to the successful claim." *Bradford*, 859 F. Supp. 2d at 792 (quoting *Abshire v. Walls*, 830 F.2d 1277, 1282-83 (4th Cir. 1987)). In addition, "[i]n this circuit, 'entitlement to fees for one aspect of a protracted litigation does not turn narrowly on whether the party prevailed on that particular matter but whether a separate claim . . . is so unrelated as to justify treating it as a separate lawsuit.'" *Bradford*, 859 F. Supp. 2d at 792 (quoting *Perry v. Bartlett*, 231 F.3d 155, 163 (4th Cir. 2000). Here, ABC's Complaint sets forth one set of "Claims for Relief," all relating to various requests submitted by ABC for records concerning the effects of wind power on birds and Defendants' actions in regulating and monitoring those impacts. *See* ECF No. 1 at 13. Consequently, especially given the Supreme Court's "direct[ion]" that "district courts [are] not to draw overly fine distinctions," *Perry*, 231 F.3d at 163, along with the fact that this was a case in which "much of counsel's time" was unavoidably "devoted generally to the litigation as a whole," *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), the fact that ABC obtained a significant number of documents that they sought at the outset of the case is sufficient to support a reasonable fee based on the lodestar calculation. *Id.*; *cf. American Canoe Ass'n v. U.S. EPA*, 138 F. Supp. 2d 722, 738 (E.D. Va. 2001) (Ellis, J.) ("[A]s *Hensley* teaches, plaintiffs are not entitled to attorneys' fees for unsuccessful claims that are *unrelated* to the claims on which they succeeded . . . .") (emphasis in original).

14

Glitzenstein."). On behalf of non-profit organizations and individuals, over the last three decades, Mr. Glitzenstein has successfully litigated many FOIA and other open government cases in the federal courts, including a FOIA case in the U.S. Supreme Court. *See* Ex. B at ¶ 4; *id*. at ¶ 5 (explaining that Mr. Glitzenstein has also co-authored the leading practice manual on open government litigation, served as the Vice-Chairman of the American Bar Association's Committee on Freedom of Information and Right to Privacy, and been invited to testify before Congress on a number of occasions regarding implementation of the FOIA and other federal open government statutes).

Although Mr. Glitzenstein's expertise and reputation, and that of his law firm, in FOIA litigation, could justify a rate well above a standard market rate, *see Jarno*, 365 F. Supp. 2d at 740-41 (explaining that the "experience, reputation, and ability of the attorney" is one of the "lodestar factors"), ABC is instead requesting a rate that "[i]f anything . . . is significantly lower than an attorney with equivalent expertise in FOIA litigation could ordinarily charge in either Northern Virginia or Washington, D.C." Ex. C at ¶ 6. Specifically, ABC is seeking compensation at the rate of $ 510/hour for time spent by Mr. Glitzenstein (who graduated from law school in 1981); $ 250/hour for time spent by MGC associates (who graduated from law school in 2009, 2012, and 2013, respectively, *see* Ex. B at ¶¶ 6, 9; $ 360/hour for time spent by Ms. Belinsky (who graduated from law school in 1999, *id*.); and $ 145/hour for time spent by MGC law clerks/paralegals.

These rates are reasonable for several reasons. First, Stephen L. Braga, who is presently the Legal Director of the Appellate Litigation Clinic at the University of Virginia Law School and who has been a "practicing attorney in this region for many years" and "is extremely familiar with the market rates for legal services in both Washington, D.C. and Northern Virginia, including Alexandria," states in his Declaration that "[b]ased on my personal understanding of the legal

15

market in Northern Virginia and specifically in Alexandria, I believe these rates are consistent with or lower than rates charged by attorneys in this area with equivalent levels of seniority and experience." Ex. C at ¶ 6.

Second, the requested rates are significantly *lower* than rates recently held to be reasonable by this court for attorneys with equivalent levels of federal court litigation experience. *See Taylor v. Republic Services, Inc.*, No. 1:12-cv-00523, 2014 U.S. Dist. LEXIS 11086, at 11-15 (E.D. Va. Jan. 24, 2014) (for time expended after March 2013, awarding rates at $ 600/hour for an attorney with 29 years of experience; $ 425/hour for an attorney with nine years of experience; and $ 325/hour for an attorney with three years of experience). Third, the rates requested are also consistent with or lower than those set forth in the "*Laffey* Matrix" developed by the U.S. Attorneys' Office for the District of Columbia. *See* Ex. B at ¶ 9, Attachment 3; *see also* Ex. C at ¶ 5 (explanation by Mr. Braga that the U.S. Attorneys' Office *Laffey* rates "in my view significantly underestimate market rates in Washington, D.C. for attorneys who specialize in federal court litigation"). While the *Laffey* rates are not "controlling in this Court," they "may be useful references for determining a reasonable hourly rate in this region." *Taylor*, 2014 U.S. Dist. LEXIS 11086, at 14-15 (citing *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009) ("[T]he *Laffey* matrix is a useful starting point to determine fees, not a required referent.").

When the rates requested are applied to the time for which fee recovery is sought – i.e., with the voluntary omission of hours applied by ABC – the total fee recovery requested for the merits phase is $ 102,396. *See* Ex. B at ¶ 9. On its face, this is not an unreasonable request for a case that was vigorously litigated through summary judgment and resulted in releases of responsive records on five occasions during the course of the litigation. *See, e.g., American Civil*

*Liberties Union v. U.S. Dep't of Homeland Security*, 810 F. Supp. 2d 267, 280 (D.D.C. 2011) (awarding more than $ 215,000 in a FOIA case litigated through summary judgment and in which the Court granted the plaintiff's motion for summary judgment in part and denied it in part).

In addition to recovery for work on the merits, it is also "well-settled that reasonable time and expenses spent preparing a fee petition are compensable." *American Canoe Ass'n*, 138 F. Supp. 2d at 745 (citing *Commissioner v. Jean*, 496 U.S. 154 (1990)). To date, ABC's counsel has spent 26.8 hours on the fee issue, and MGC law clerks have spent 10.8 hours. At the proposed rates, this would yield an additional fee recovery of $ 15,324. *See* Ex. B at ¶ 10. However, consistent with Plaintiff's voluntary exercise of "billing judgment" with regard to the merits phase, ABC proposes a comparable reduction for time spent by counsel on the fee matter, which would yield a recovery of $ 12,500.[9]

Finally, in addition to allowing the recovery of reasonable attorney's fees, the FOIA's citizen suit provision also authorizes the Court to award to a prevailing plaintiff any "other litigation costs reasonably incurred . . . ." 5 U.S.C. § 552(a)(4)(E). Here, ABC seeks $ 2,579 in such costs, as set forth in counsel's contemporaneously maintained records. *See* Ex. B at ¶ 11, Attachments 1 and 2.

## **CONCLUSION**

For the foregoing reasons, ABC respectfully requests that the Court award it $ 114,896 in fees and $ 2,579 in costs, for a total of $ 117,475.

---

[9] ABC reserves the right to supplement this amount based on time necessarily spent on a reply memorandum and any further proceedings on the fee issue.

17

Respectfully submitted,

/s/ Michelle Sinnott
Michelle Sinnott (Va. Bar No. 85563)
Eric R. Glitzenstein (admitted pro hac vice)
Meyer Glitzenstein & Crystal
Suite 700
1601 Connecticut Ave., N.W.
Washington, D.C.  20009
Phone: (202) 588-5206
Fax: (202) 588-5049
Email: eglitzenstein@meyerglitz.com
            msinnott@meyerglitz.com

Date: September 11, 2014            Counsel for Plaintiff